IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SAPARALI YRYSBAEV, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 6:26-cv-3047-MDH |
| ) | |
| JIM ARNOTT, *et. al.*, ) | |
| ) | |
| Respondents. ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

On April 16, 2023, Petitioner entered the United States with his spouse, Aisezim Sultanova, after presenting himself for inspection at the port of entry pursuant to a scheduled CBP One humanitarian parole appointment. Upon arrival, Petitioner and his spouse were inspected by U.S. Customs and Border Protection and lawfully paroled into the United States under INA § 212(d)(5), with Form I-94s authorizing their stay through April 14, 2024. Until his detention, he obtained employment authorization, lawfully worked, and paid taxes.

Petitioner's removal proceedings were properly docketed with the Chicago Immigration Court under EOIR Case No. 244-036-426. He appeared as required at his Master Calendar Hearing on March 3, 2025. At that hearing, the Immigration Court confirmed that Petitioner had complied

1

with all court orders and had submitted the required documentation, and the Court therefore scheduled his Individual Hearing for June 9, 2026.

Petitioner has no history of failing to appear and was actively pursuing his asylum claim before the Immigration Judge. Petitioner diligently complied with all legal requirements while awaiting his day in court. On December 16, 2023, he timely filed an application for asylum with the Immigration Court. After the statutory waiting period elapsed, he was granted employment authorization and obtained a commercial driver's license. Although he was qualified to work as a truck driver, he was unable to do so because of concerns about ICE enforcement during interstate travel. Instead, he worked lawfully as an Uber driver for a period of time, paid taxes, and maintained a fixed residence in Illinois.

On October 10, 2025, Petitioner was detained by ICE while working as an Uber driver in the Uber Parking Lot at O'Hare International Airport. Petitioner was transferred to Greene County Jail in Springfield, Missouri.

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the acting field office director for ICE Kansas City, (2) the Secretary of DHS, (3) the Greene County Sheriff, all in their official capacities, (4) the Acting Director of ICE, and (5) the Attorney General of the United States.[1] He asserts his detention violates the Immigration Nationality Act (INA), and the Due Process Clause. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

---

[1] Petitioner's Petition lists Sheriff Arnott as a party by virtue of his administration of the Greene County Jail where Petitioner is currently detained. While Sheriff Arnott was not served in this case as of the date of this Order, the Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

2

# DISCUSSION

## I. Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), 1252(g) and (b)(9) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3), entitled "Challenges on validity of the system," limits the scope of judicial review of "orders under Section 1225(b)(1)" and limits venue to the U.S. District Court for the District of Columbia. Petitioner is "not challenging the lawfulness of any particular statute, regulation, or written policy or procedure." Thus, § 1252(e)(3) does not strip this Court of jurisdiction. *See Munoz Materano v. Arteta*, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025), at *10. Further, this statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, the Court adopts its ruling in similar cases[2] and finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986,

---

[2] *Andres v. Noem*, et al., No. 25-03321-CV-S-MDH, *Eshdavlatov v. Olson*, et al. No. 25-00844-CV-S-MDH, *Hernandez-Cuevas v. Olson*, et al., No. 25-00830-CV-W-BP, *Ifante v. Noem*, et al., No. 25-03322-CV-S-MDH, *Morales-Rodriguez v. Arnott*, et al., No. 25-00836-CV-S-MDH, *Pozos-Ramirez v. Noem*, et al., No. 25-03316-CV- S-MDH. As of the date of this Order the Court is not aware of any appellate decisions from this Circuit. The Court however will highlight cases from District Courts in this Circuit as supporting the analysis in this case: *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *4 (N.D. Iowa Sept. 23, 2025); *Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025). The Court is aware that the Fifth Circuit issued a 2-1 decision from a 3-judge panel agreeing with the Respondents' position and rejecting Petitioner's arguments and hundreds of district court decisions across the country. *See Buenrostro-Mendez v. Bondi*, Case No. 25-20496 (5th Circuit, 02/06/2026). The Fifth Circuit's decision does not bind this Court.

2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)); *Cifuentes Rivera v. Arnott, et al*, 25-cv-00570-RK1, Doc.19 at 7 (W.D. Mo. Oct. 07, 2025) ("the narrow scope of § 1252(g) does not cover "claims [that] are collateral to the Government's decision to execute the final order of removal," for instance, claims seeking relief based upon the Government's alleged failure to comply with its own regulations regarding the required administrative processes after an alien is detained."). Petitioner is challenging his unlawful detention, not any removal decisions or actions, so the above provisions do not deprive the Court of jurisdiction.

For those reasons, this Court concludes it has jurisdiction over Petitioner's habeas petition.

## II.  The Due Process Clause

"A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Sanchez v. LaRose*, 2025 U.S. Dist. LEXIS 190593, *6-7 (citing *Miranda v. City of Casa Grande*, 15 F4th 1219, 1225 (9th Cir. 2021) (internal quotations and citation omitted)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Sanchez v. LaRose* at *7 (citing *Zadvydas v. Davis*, 533 U.S. at 690). Although immigration detention is administrative, it is still subject to due process clause review. *Id.* (citing *Hernandez v. Sessions*, 872 F3d at 981 ("the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process.")). When the government grants an alien parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment. *Id*. (citing *Alegria Palma v. LaRose*, 25-cv-1942, ECF No.14 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom

4

after release on own recognizance" was a core liberty interest)). Here, Petitioner was deprived of his liberty interest in his prior parole status when Respondents revoked that parole and placed him in detention.

Respondents also denied petitioner due process in the revocation of his parole. "The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it." *Sanchez* at *8 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72, 71 S. Ct. 624, 95 L. Ed. 817 (Frankfurter, J., concurring)). In the immigration context, "the Constitution requires the government to afford notice of any action against an alien [and] requires an opportunity for the alien to be heard. [] The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner." *Id*. (citing *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398, 403 (S.D.N.Y. 2004) (internal quotations and citations omitted)).

An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's parole "at any time" on a discretionary, but not unlimited, basis. *Id*. at *8. (citing 8 U.S.C. § 1226(b); *Mohammed H. v. Trump*, No. 25-1576 (JWB/DTS), 2025 U.S. Dist. LEXIS 117197, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) ("The Government has wide—but not unlimited—discretion in the immigration realm.")). The Board of Immigration Appeals ("BIA") has held that DHS may change the conditions of an alien's parole only when there is a sufficient change of circumstances to justify that change. *Id*. (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (as cited in *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No.14 at 3)). "In practice, the DHS re-arrests individuals only after a 'material' change in circumstances."

5

*Id*. at *9. (citing *Ortega v. Bonnar*, 415 F.Supp.3d 963, 968 (N.D. Cal. 2019)). To satisfy due process, those changed circumstances must represent individualized legal justification for detention. *Id*. at *9 (citing *Mohammed H.*, 2025 U.S. Dist. LEXIS 117197, 2025 WL 1692739 at *5 (granting a writ of habeas corpus on due process grounds due to a lack of individualized legal justification for changing the petitioner's status)).

Here, Respondents revoked Petitioner's parole without a showing of change in circumstances related to his case. Respondents do not dispute the facts as Petitioner presents them. They only argue that Petitioner is still considered to be an arriving alien because he was detained at a port-of-entry 3 years ago. However, Petitioner was admitted into the interior of the United States and granted parole. In their briefing, Respondents do not state a "sufficient change in circumstances" to justify revoking Petitioner's parole, or any individualized justification at all. *Id*. at *9 (citing *Matter of Sugay*, 17 I. & N. Dec. at 640). Petitioner's parole into the U.S. was based on his asylum claim, the underlying facts of which have not changed, and he was in possession of a still-valid work authorization, a social security number, and awaiting further immigration proceedings. There was no evidence from his conduct that he was a flight risk. He was simply performing his duties as an Uber driver in Chicago waiting to pick up passengers at the airport. Thus, Respondents did not satisfy the requirement of due process in revoking Petitioner's parole.

### III. Temporary Restraining Order

In the Petition, Petitioner seeks an order permanently enjoining his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Petitioner also requests this Court grant any further relief this Court deems just and proper.

The Court below orders release and will not issue a TRO or permanent injunction specifically for those matters. However, under similar circumstances, this Court has granted temporary injunctive relief to habeas petitioners to enjoin Respondents from relocating petitioners outside the jurisdiction of this Court prior to compliance with this Order. The Courts finds that such relief is just and proper in this case.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs.*, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeas Corpus by virtue of his Due Process argument. Further, the threat of irreparable harm to the movant absent injunction is high as any move from this district prior to a bond hearing would render this Order and Petitioner right to a hearing as meaningless. As to the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a hearing. Lastly, there is a public interest in allowing those who are detained in violation of the Due Process Clause to be released and given hearing as expressed and determined by Congress. For these reasons, the Court finds a TRO is appropriate.

IV. **Attorneys' Fees**

Petitioner requests an award of reasonable attorneys' fees and costs. Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. Respondents revoked Petitioner's parole without a showing of change in circumstances related to his case. Respondents do not dispute the facts of Petitioner's status, arrest, or detainment. Yet, Respondents revoked Petitioner's parole without prior written notice. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## **CONCLUSION**

8

Case 6:26-cv-03047-MDH    Document 8    Filed 02/12/26    Page 8 of 9

The Court concludes Respondents revoked Petitioner's parole without a showing of change in circumstances, his right to procedural due process has been violated, and he is entitled to immediate release. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondents.

4. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: February 12, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**